In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-1936

DIRECT SUPPLY, INC.,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 20-C-1095 — **Lynn Adelman**, *Judge.*

ARGUED JANUARY 22, 2024 — DECIDED MARCH 22, 2024

Before EASTERBROOK, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Section 199 of the Internal Revenue Code, 26 U.S.C. §199, was in force between 2004 and 2017. It allowed a deduction equal to 9% of receipts from certain "domestic production activities", with a cap at 50% of wages paid to the firm's workers. The deduction depended on the "disposition" (§199(c)(4)(A)(i)) of "qualifying production property" (§199(c)(4)(A)(i)(I)), defined to include "any

computer software" (§199(c)(5)(B)). The IRS elaborated on the word "disposition" in regulations by specifying that §199 allows deductions based on revenues from sales but not revenues from services. 26 C.F.R. §1.199–3(i)(4)(i)(A). Direct Supply took deductions under §199 before its repeal, but the Internal Revenue Service disallowed them. About $3.5 million is at stake in this suit seeking a refund. Direct Supply does not dispute the way the regulations implement the statute but instead argues that it prevails under them.

Among other activities, Direct Supply helps nursing homes purchase equipment, medical supplies, and furniture. It devised a system that it calls "Direct Supply DSSI" (which the parties shorten to "DSSI") that makes customer-specific catalogs of items available to purchase. Each customer (usually a chain comprising many nursing homes) negotiates with vendors; once customer and vendor agree about what will be available at what price, Direct Supply places that vendor's products in an online catalog that the customer's authorized representatives can browse and order from. DSSI consolidates products from all of a customer's authorized vendors. Each customer sees a bespoke catalog created by the efforts of multiple vendors, the customer, and Direct Supply's staff. Customers promise Direct Supply that, once such a catalog has been constructed (something that requires a good deal of work), it will order "substantially all" needed products through DSSI. Vendors ship to customers directly and bill them through DSSI. Every customer pays a flat monthly fee for the catalog's maintenance, and every vendor pays Direct Supply a fee based on the value of goods that customers order. The customers' fees account for no more than 5% of revenue from DSSI and the vendors' fees about 95%. (We disregard some other fees that don't amount to much.)

The IRS sees DSSI as a service based on software, while Direct Supply maintains that DSSI is the "disposition" of the software that runs the system. The district court sided with the IRS. 635 F. Supp. 3d 685 (E.D. Wis. 2022). It observed that customers all sign an "Application Service Provider Agreement"; Direct Supply itself thus called DSSI a service. Most of the revenue that flows to Direct Supply comes from fees that are a percentage of the vendors' sales, rather than anything that measures the value of software—and neither the vendors nor the customers possess software code or a license to use any of DSSI's software. The judge likened DSSI to Amazon's system for ordering and delivering goods or the *New York Times*'s system for providing reportage over the Internet. These systems depend on software, but they do not "dispose" of that software. Indeed, 26 C.F.R. §1.199–3(i)(6)(ii) disallows deductions under §199 for these kinds of activities.

That understanding is unavoidable as long as it is necessary to distinguish between the disposition of software and the provision of a service based on software. A part of the governing regulation, 26 C.F.R. §1.199–3(i)(1)(i), says that to qualify under §199 the receipts must be "directly derived" from disposition of the qualifying property; Direct Supply's receipts were not "directly derived" from software, as opposed to the goods the vendors sold to the customers. Direct Supply does not furnish software that a customer can use to create its own online-ordering systems. Instead Direct Supply itself creates a system; software does not change hands. Direct Supply emphasizes that it provides customers with user names and passwords, but these steps do not dispose of software any more than they do when Amazon and the *Times* provide their customers with the same sort of credentials.

Things might be more complex if Direct Supply had attempted to determine how much of the revenue from DSSI could be traced to the value of software and how much to the efforts of its staff (and the efforts of both vendors and customers) to make ordering work, but it has not attempted any such partition. It treated the whole gross revenue from DSSI as eligible for the §199 deduction, which has to be the one impossible outcome.

Direct Supply had another potential means to show that there was at least a virtual or implicit disposition of software. When a system, though nominally a service, provides access to software "for the customers' direct use while connected to the Internet or any other public or private communications network", while another person derives income from the sale or disposition of "substantially identical software", the receipts from that "direct use" are deductable under §199. See 26 C.F.R. §1.199–3(i)(6)(iii), (iii)(B), (iv)(A)(1). Direct Supply observes that at least five firms (Ariba, Basware, Ivalua, Wallmedien, and Zycus) sell or lease software packages that customers can use to create their own ordering systems. Yet again the problem for Direct Supply is that it did not provide "direct use" of the software underlying DSSI or establish that DSSI is "substantially identical" from consumers' perspective to the products of these other vendors. DSSI is a system for ordering and billing for merchandise, not for customers to set up and manage their own databases as the directly sold packages do.

As Direct Supply sees things, "if Direct Supply had chosen a different pricing model and its contracts had said, 'Direct Supply hereby grants licensee a non-exclusive license to use DSSI for one year for $X …' there would be much less

controversy on this aspect of the deduction." Brief 32–33 n.10. Maybe—though as we've remarked DSSI is more than just software. Direct Supply would have needed to license something comparable to the packages licensed or sold by Ariba, Basware, Ivalua, Wallmedien, and Zycus. Even then, all Direct Supply could have deducted would have been the fees received from its customers. What it actually deducted were fees received from the vendors—and even with the pricing model that Direct Supply now wishes it had used, it would be impossible to picture the vendors as acquiring any software from Direct Supply.

AFFIRMED